UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

IQBAL N. SULEHRIA,

                                        Plaintiff,

                -v.-

                                                        1:12-CV-21
THE STATE OF NEW YORK,                                  (LEK/ATB)
*et al.*,

                                        Defendants.

---

IQBAL N. SULEHRIA
Plaintiff, *pro se*

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT and RECOMMENDATION

The Clerk has sent to the Court for review a complaint, together with an application to proceed *in forma pauperis* (IFP) (Dkt. No. 2), submitted for filing by *pro se* plaintiff Iqbal N. Sulehria.  Plaintiff brings this action for employment discrimination pursuant to a myriad of statutes and constitutional provisions which will be discussed below. (Compl.; Dkt. No. 1).  Plaintiff seeks, *inter alia*, one hundred million dollars in compensatory damages, a nullification of "all of the illegal appointments of unknown individuals who were hired without . . . merit," the establishment of an independent commission to monitor the defendants' conduct, and a judgment for criminal penalties against the defendants. (Compl. at 31-32).[1]

---

[1] Plaintiff has numbered the pages of his complaint and has also numbered most of the paragraphs.  The page numbers that plaintiff has assigned match the numbers assigned by the court's electronic case management system (CM/ECF).  In this Report-Recommendation, the court will refer to either the pages of the complaint or to the paragraph numbers assigned by plaintiff as appropriate.

I.     *In Forma Pauperis* **("IFP") Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2).  Plaintiff states that he has been unemployed for almost one year, he currently resides with his parents, and has no other property or bank accounts. (Dkt. No. 2 at 2).  Plaintiff also states that he owes a substantial amount of money in "Education Loans and other debts." (*Id.*)  Plaintiff has attached some documentation regarding these alleged outstanding loans. (*Id.* at 3-5).  Although the amount shown in plaintiff's exhibits is actually less than the amount that plaintiff claims that he owes, this court will find for purposes of this recommendation, that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the

2

court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II.  <u>Complaint</u>

Plaintiff claims that after the "cataclysmic events of September 11, 2001 a stygian pall of paranoia, enemity [sic], hostility and illegal discrimination began to permeate the hiring environment in the state of New York and its departments." (Compl. ¶ 7). Based upon this statement, plaintiff alleges that Pakistanis and those who "appeared to be of Muslim descent were subjected to unlawful discrimination and unlawful retaliation." *Id.* Plaintiff claims that because of this anti-Muslim sentiment, and notwithstanding his excellent credentials, he was systematically and unlawfully

3

denied jobs by "N.Y.S. State, its entities, and its employees." *Id.*

Plaintiff alleges that on approximately September 2, 2010, he applied for six different New York State civil service jobs.[2] (Compl. ¶ 13).  Plaintiff claims that he was not allowed to take the written tests for these positions. (Compl. ¶¶ 14-19). Plaintiff then states that he believes that the State gave preference to Christian, white, Black, female and under-40 candidates, even though these individuals did not meet the hiring criteria. (Compl. ¶ 20).  Plaintiff states that he has an LL.M degree and therefore, was better qualified than the other individuals who applied for the jobs in question. (Compl. ¶ 46).  Plaintiff makes the sweeping claim that this "selective treatment" was based on "age, color, gender, religion, national origin, ethnicity, creed, and sexual orientation." (Compl. ¶ 22).  Plaintiff alleges a myriad of additional unsupported conclusions, including that he was subjected to a "hostile work environment." (Compl. ¶ 22).  Plaintiff further claims that the defendants have a policy and practice of failing to train and supervise their employees with respect to discrimination, harassment, and retaliation. (Compl. ¶ 24).

In addition to disparate treatment and "a Hostile Working Environment," plaintiff states that the "terms and conditions of [plaintiff's] potential employment were materially altered by defendant's [sic] conduct." (Compl. ¶¶ 27, 30, 47). Plaintiff accuses the defendants of "employing criminal acts," including conspiracies, verbal assaults, and aggravated harassment." (Compl. ¶ 52).  He also states that none

---

[2] (1) Employment specialist for individuals with disabilities 1; (2) Supervisor of Correctional Facility Volunteer Services; (3) Labor Services Representative Trainee 1; (4) Human Rights Specialist 1; (5) Correction Officer Trainee; and (6) Public Work Wage Investigator. (Compl. ¶ 13).

of the defendants "ever made any attempt to provide the plaintiff with the medical attention made necessary by the above defendants' conduct." (Compl. ¶ 53).  Plaintiff alleges that the defendants did not properly investigate his allegations of discrimination and failed to take corrective action against those individuals who were engaged in the inappropriate conduct. (Compl. ¶¶ 57, 58).  In fact, plaintiff alleges that the defendants were not properly tested for their "psychological well-being . . . and brain related problems . . . including but not limited to battered spouse's syndrome . . . etc." *Id.*  He may be attempting to state a claim for wrongful or negligent hiring of the defendants. (Compl. ¶ 59).  Plaintiff also accuses the defendants of being "chronic alcohol abusers." (Compl. ¶ 40).

The complaint contains fifty six causes of action, including violations of 42 U.S.C. §§ 1981, 1983, 1985, 1988, Title VI, Title VII, Title IX, NYS Human Rights Law, New York City Administrative Code, "the Theory of Pattern and Practice," disparate treatment/impact, negligent hiring and/or retention, negligent infliction of emotional distress, breach of implied covenant of good faith and fair dealing, unjust enrichment, fraud, false representations, Age Discrimination, National Labor Relations Act, 29 U.S.C. § 157-58, The Immigration and Nationality Reform and Control Act of 1986, excessive force, failure to intercede, abuse of authority, whistleblower claims under N.Y. Civil Service Law § 75-b(2)(a) and NY Labor Law § 740, Section 504 of the Rehabilitation Act, tortious interference with economic opportunity, invasion of privacy, "a taking claim," aggravated harassment, various constitutional violations, Mental Hygiene Law § 19.01, and "other related claims." *Id.*

5

### III.    **Random Statutes**

The complaint lists so many statutory provisions as the bases for plaintiff's claims that the complaint is very difficult to decipher.  The court will first attempt to pare down the random statutes that have absolutely nothing to do with plaintiff's claims.  I will focus on the listing of bases in the section of the complaint entitled "**I. Introduction**." (Compl. ¶ 1).

#### A.    **Fair Labor Standards**

In his introductory paragraph, plaintiff cites the "Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, 207."  Neither of these sections has any bearing on the facts stated in plaintiff's claims of discrimination.  Section 201 is the "Short Title" of the Act and contains no other provisions.  Section 207 is entitled "Maximum Hours," and provides that certain employees shall not be employed for a workweek that is longer than forty hours "[e]xcept as otherwise provided in this section." 29 U.S.C. § 207(a).

Other subsections of the FLSA involve compensation rates, grants, stock options and other issues related to hours of work and type of industry. *Id.* § 207(a)-(n). One subsection refers to "compensatory time," another refers to hours worked by public employees in fire protection, or law enforcement, and another section involves public employees who work part-time *Id.* § 207(o)-(p).  The section also provides for exemptions for individuals who are receiving remedial education and provides for "reasonable break time." *Id.* ¶ 207(q)-(r).  Plaintiff cites no facts in his complaint that would even remotely state a claim under the above cited sections of the FLSA.  Thus,

6

plaintiff may not bring this action pursuant to the cited sections of the Fair Labor Standards Act.

**B.    The "Immigration and National [sic] Act as Amended by the Immigration Reform and Control Act of 1986"**

The court assumes that plaintiff is referring to the Immigration and Nationality Act, as amended by the Immigration Reform and Control Act of 1986.  However, plaintiff does not cite any particular section of the statute, and the court can only guess at what he may be trying to raise by citing this statute.  The Act makes it unlawful to employ "unauthorized aliens." 8 U.S.C. § 1324a.  There are cases citing this Act and discussing the inability to hire illegal aliens or award them back pay. *See, e.g.,* *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 140 (2002).

In *Chamber of Commerce of United States v. Whiting*, Justice Sotomayor stated in her dissenting opinion that "[i]n enacting the Immigration Reform and Control Act of 1986 (IRCA), . . . Congress created a 'comprehensive scheme prohibiting the employment of illegal aliens in the United States.'" *Chamber of Commerce of United States v. Whiting*, 131 S. Ct. 1968, 1998 (2011) (Sotomayor) (Dissenting); *N.L.R.B. v. Domsey Trading Corp.*, 636 F.3d 33, 35 n.3 (2d Cir. 2011) (the IRCA made it illegal to knowingly hire undocumented immigrants and required employers to verify the immigration status of newly-hired employees).   However, this plaintiff's allegations have nothing to do with illegal aliens or back pay, and the citation of this statute as a basis for his claims is frivolous.

### C.     The Equal Pay Act of 1963 (EPA)

Again, plaintiff cites no specific section of this statute, and in general, the EPA prohibits employers from discriminating among employees on the basis of sex by paying different wages for equal work, performed under similar working conditions. *See Trumble v. County of Oswego*, No. 5:11-CV-462, 2012 WL 39636, at \*5 (N.D.N.Y. Jan. 6, 2012) (citing 29 U.S.C. § 209(d)(1)).  The elements of a case under the EPA require that an employer pay different wages to employees of the opposite sex; the employees perform equal jobs requiring equal skills and responsibilities; and the jobs are performed under similar working conditions. *Id.* (citing *inter alia Lavin-McEleney v. Marist College*, 239 F.3d 476, 479 (2d Cir. 2001)).

Plaintiff in this case claims that he was not allowed to sit for civil service examinations.  He was never employed by New York State in the jobs for which he was attempting to take the test; thus, plaintiff does not and cannot claim that an employee of the opposite sex was paid more than he was for equal work.  Plaintiff's citation of this statute as a basis for his claims is frivolous.

### D.     National Labor Relations Act §§ 7, 8

Plaintiff cites 29 U.S.C. §§ 157, 158(a)(1).  Section 157 provides for the right of employees to organize and to engage in collective bargaining.  Section 158(a)(1) provides that it shall be an "unfair labor practice" for an employer to interfere with, restrain or coerce employees in the exercise of the right to organize and engage in collective bargaining.  Neither section applies in any way to plaintiff's claims, and thus, plaintiff's complaint may be dismissed to the extent that he purports to raise

claims under this statute.

### E.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

In order to make out a prima facie case of disability discrimination, the plaintiff must show that (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without accommodation; and (4) he was subject to an adverse employment action because of the disability. *Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 149-50 (2d Cir. 1998).  An individual may state a claim under the ADA even without an impairment, as long as the plaintiff is regarded as having an impairment that qualifies under the ADA. *Francis v. City of Meridian*, 129 F.3d 281, 284 (2d Cir. 1997).  To be regarded as having a disability, the plaintiff must show that he is regarded as having an impairment that substantially limits one or more major life activities. *Id.* at 285.

The Rehabilitation Act provides protection from discrimination, similar to the protection afforded by the ADA, for individuals with disabilities by a program or activity receiving Federal assistance.  The standard under the Rehabilitation Act is, with a minor difference that is not relevant here, the same as under the ADA. *See Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999).

Plaintiff states that he was not allowed to take civil service examinations based upon discrimination that began due to the events of September 11, 2001.  Nowhere in the complaint does he allege that he has a disability or that he is perceived as having a

disability sufficient to state a claim under either the ADA[3] or the Rehabilitation Act. Any claims that plaintiff purports to bring under these statutes may be dismissed.

### F.    Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1661-88

Plaintiff's complaint also mentions Title IX.  Title IX prohibits gender discrimination by educational programs, including schools, or other activities receiving Federal assistance.  As stated above, plaintiff only states that he was denied the right to sit for civil service examinations because he is Pakistani or Muslim.  There is no indication that he was prevented from taking these examinations because he was a man,[4] and there is no indication that any of these examinations involved educational programs or activities involving Federal assistance within the meaning of Title IX. Thus, any claim under Title IX may be dismissed for failure to state a claim and as frivolous.

### G.    Remaining Statutes

The remaining statutes upon which plaintiff bases his claims are: 42 U.S.C. §§ 1981, 1983, 1985, 1988, 2000d (Title VI), and 2000e (Title VII).  Plaintiff also cites the Federal and State constitutions as well as a variety of New York State Statutes: New York State Executive Law §§ 290, 296, General Municipal Law § 205-

---

[3] The ADA does have a section protecting plaintiffs from a discriminatory failure to hire. 42 U.S.C. § 12112(a).  No covered entity may discriminate against a qualified individual "*on the basis of disability*" in regard to job application procedures and hiring. *Id.* (emphasis added).  However, this plaintiff does not state that he has a disability; thus, there is no protection for him under this statute.

[4] In one sentence, plaintiff states that it is his belief that other individuals, including "female[s]" were systematically hired by the State of New York, but the sentence is completely conclusory. (Compl. ¶ 20).

e, Title 8 of the New York City[5] Administrative Code, §§ 8-107(1)(a), (13)(b), New York General Business Law § 349, New York Labor Law § 740.  The court will discuss the New York State statutes at the end of this Report when supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) is discussed.

## IV.   **Individual Named Defendants**

Plaintiff names five individual defendants.[6]  Four of the five are named "individually" and as "Representatives" of the New York State Department of Civil Service: Lindsay Shea Childrose, Diane M. Sisario, Ivan Coello, and  Freddie Burns.[7] The fifth individual defendant is named "individually" and as "Senior Personnel" of the New York State Department of Labor: Cathy Emmerick.

Individuals are not subject to liability under Title VII; thus, to the extent that plaintiff raises Title VI or Title VII claims (including any retaliation claims), they may not be brought against the individual defendants. *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221

---

[5] The court assumes that plaintiff is citing the New York City Administrative Code because he was apparently attempting to take the examinations in New York City, although this is unclear.  The court's assumption is based upon plaintiff's documents indicating that he listed a Brooklyn address when he brought his Equal Opportunity Employment Commission (EEOC) complaint in this case. (*See* Compl. Ex. A at 4 (EEOC letter to plaintiff, listing Brooklyn address), 6 (plaintiff's EEOC charge of discrimination, listing plaintiff's Brooklyn address)).

[6] Plaintiff also names "John and Jane Doe" defendants 1-50.

[7] The court notes that plaintiff names "Eric Scheniderman, as Attorney General in his official capacity." (Compl. at 1).  An action against state officers in their "official" capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991).  If plaintiff had named the Attorney General in his individual capacity, he could not bring a Title VII or Title VI action against him.  The court will assume, however, that plaintiff intended only to bring official capacity claims against this defendant.

(2d Cir. 2004)).  The only federal claims available against the individuals are claims under section 1981,[8] 1983,[9] and 1985.[10]

Section 1981, 1983, and 1985 claims may not be brought against New York State, State agencies, or state actors in their "official capacities." *Concey v. New York State Unified Court System*, 2011 WL 4549386, at *7 (S.D.N.Y. Sept. 30, 2011) (citations omitted).  Claims against these defendants in their "official capacity," or claims against the State, the Department of Civil Service, and the Department of Labor would be precluded by the Eleventh Amendment.  Thus, any section 1981, 1983, and 1985 claims may be dismissed as against defendants in their "official capacities," and any claims under these statutes against the Civil Service Department, the Department of Labor, and Eric Schneiderman, as the Attorney General of New York must be dismissed as barred by the Eleventh Amendment.

To the extent that the named defendants may be sued in their individual

---

[8] Section 1981 provides in relevant part, that all persons within the jurisdiction of the United States shall have equal rights to make and enforce contracts, to sue and be sued, to give evidence, and to the full benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens. 42 U.S.C. § 1981(a).

[9] Section 1983 provides a cause of action for individuals who have had their constitutional or federal rights violated by a defendant acting under color of state law. 42 U.S.C. § 1983.  Unlike section 1981, section 1983 is based upon an underlying violation of a constitutional right and does not provide a right of action in itself.

[10] To establish a claim under section 1985(3), plaintiff must establish a racial or class-based conspiracy to deprive a person or class of persons of equal protection of the laws. *Id.*  Plaintiff must also establish an act done in furtherance of the conspiracy, and he must establish that he was injured in his person or property as a result. *Id.*  Plaintiff also cites 42 U.S.C. § 1988 as a "basis" for his claims.  However, 42 U.S.C. § 1988 is not a separate basis for jurisdiction.  Section 1988 provides for the applicability of certain laws and provides for attorneys fees for prevailing parties in the enforcement of other sections of the civil rights laws. 42 U.S.C. § 1988(a)-(c).  The court will only consider claims under statutes that could support a basis for plaintiff's claims.

capacities, these statutes require that plaintiff demonstrate defendants' personal

involvement in the alleged constitutional violation. *Kantrowitz v. Uniondale Union*

*Free School Dist.*, No. 08-CV-3592, 2011 WL 4593147, at \*17 (E.D.N.Y. Sept. 30,

2011) (discussing both section 1983 and 1981) (citing *inter alia Ashcroft v. Iqbal*, 556

U.S. 662, ___, 129 S. Ct. 1937, 1948 (2009); *Gill v. Mooney*, 824 F.2d 192, 196 (2d

Cir. 1987)).  The personal involvement requirement also applies to conspiracy claims

under section 1985. *Keitt v. New York City*, No. 09 Civ. 8508, 2011 WL 4526147, at

\*3 (S.D.N.Y. Sept. 29, 2011).

In this case, although plaintiff lists all the above individuals in the caption of

the complaint, plaintiff never alleges how *any* of them were personally involved in

keeping him from taking the examinations that he wished to take.  It is well-

established that conclusory allegations are insufficient to establish a cause of action

under the civil rights laws. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987);

*Mazurek v. Wolcott Bd. of Educ.*, 815 F. Supp. 71, 77 (D. Conn. 1993) (citations

omitted).  Plaintiff's complaint in this case is nothing but conclusory allegations.

To the extent that these individuals are supervisory officials,[11] respondeat

superior is an inappropriate theory of liability for any constitutional claim.  *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347

F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.

---

[11] The complaint seems to imply that these defendants are supervisory officials.  In paragraph 57, plaintiff states that "the above defendant Supervisors and policy makers failed to take any proper and statutory action whatsoever against above named John does and Jane Does defendants who acted in a criminal manner and committed crimes under color of the law."

1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.  See Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) (stating that defendant could be liable under section 1983 if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

There is no indication that any of these individuals created a discriminatory custom or policy or that they were aware of plaintiff's attempts to take these examinations. According to the complaint, all defendants reside and have their offices in Albany, New York. (Compl. ¶ 12(i)-(v)).  It is unclear where plaintiff attempted to take the examinations, but these supervisory officials are not alleged to have been present at the testing sites, and plaintiff never describes how, or by whom, he was

14

refused access to the tests.  Instead, plaintiff claims that the supervisors failed to appropriately test the other John Doe defendants for mental and brain-related problems. (Compl. ¶ 57).  Plaintiff has failed to state sufficient personal involvement of these named supervisory defendants to state a plausible claim against them.  The defendants are all random individuals, and nowhere does plaintiff allege how they could or would have conspired under section 1985 to violate his constitutional rights. Complaints relying on civil rights statutes must contain some specific allegations of fact indicating a deprivation of rights, instead of a "litany of general conclusions that shock but have no meaning." *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (citing *inter alia Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).  A careful review of plaintiff's complaint shows that plaintiff's claims are all based on his conclusory speculation that he is being discriminated against because of September 11, 2001, and because he is Pakistani.  Plaintiff cites absolutely no basis for his conclusions.  Thus, any claims against these individual defendants must be dismissed.[12]

## V.    **"*Monell*" Claims**

Plaintiff asks for "*Monell* damages." (Compl. ¶ 74).  A municipality such as the City of New York may be held liable as a "person" within the meaning of section 1983. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). However, in order for the municipality to be found liable, the civil rights violation in question must have been caused by the municipality's policy or custom. *Id.* at 694.

---

[12] In plaintiff's 36th-42nd "Claims for Relief," plaintiff includes claims that he entitles "Excessive Force, Failure to Intercede, and Abuse of Authority." (Compl. ¶ 102).  It is completely unclear how any of those claims are relevant to the facts stated in plaintiff's complaint.

The policy must be the "moving force" behind the constitutional violation. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (internal quotations omitted). Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal connection between the municipal action and the deprivation of federal rights. *Id.*

The court, once again, is left to speculate regarding plaintiff's request for relief and must only assume that plaintiff is referring to New York City.  Plaintiff's attempt to raise *Monell* claims must be dismissed.  He does not name New York City as a defendant, and therefore, *Monell* is not a proper basis for relief against the existing New York State defendants.  There is also no claim that any of the conduct in question was committed by employees of a municipality, a further reason to dismiss any claims under *Monell*, regardless of the defendants that he has named in the caption of the complaint.

## VI.    Titles VI and VII

Congress has abrogated the State's sovereign immunity by enacting the 1972 amendments to Title VII, pursuant to the authority of section 5 of the 14th Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445 456 (1976).  Thus, a *properly* stated claim for employment discrimination may be brought against the State, its departments or agencies, even though similar claims under constitutional provisions or other statutes might be barred by the Eleventh Amendment. *Feingold v. New York*, 366 F.3d 138, 149, 150, 157 (2d Cir. 2004). Title VI involves the same prohibitions for employers that receive federal funds. 42 U.S.C. § 2000d.  Thus, if plaintiff in this case has stated

16

a plausible claim under either Title VII or Title VI, the case could proceed against the State of New York.[13]

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms conditions, or privileges of employment, because of the individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1).  In order to state a claim under Title VII, plaintiff must show that he was a member of a protected class, he was qualified for the position, he suffered an adverse employment action, and the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Roge v. NYP Holdings, Inc.* 257 F.3d 164, 168 (2d Cir. 2001).  A plaintiff relying on disparate treatment must show that he was similarly situated in all material respects to the individuals with whom he seeks to compare himself. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

In this case, although plaintiff states that after September 11, 2001, he suffered unlawful discrimination and retaliation when he was "denied jobs systematically and unlawfully by the N.Y.S. State and its entities" because he was Pakistani.  He also

---

[13] Plaintiff has obtained a "Right-to-Sue Letter" from the EEOC, a prerequisite to filing a civil action in Federal Court. (Compl. Ex. A at pp. 2-5). *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006).  The court notes that there are cases in which plaintiffs have challenged civil services examinations. *See, e.g. Ricci v. DeStephano*, 557 U.S. 557 (2009) (challenging the fialure to certify the results of a promotional examination);  *Bushey v. N.Y. State Civil Svce. Comm*, 733 F.2d 220 (2d Cir. 1984) (challenging affirmative action regarding civil service examinations), *cert. denied*, 469 U.S. 1117 (1985); *Association Against Discrimination in Employment*, 647 F.2d 256 (2d Cir. 1981) (case challenging civil service examination for fire department); *United States v. City of New York*, No. 07-CV-2067, 2012 WL 314353 (E.D.N.Y. Feb. 1, 2012) (case challenging civil service examination procedures).  However, the cited cases involve challenges to the tests themselves, rather than the refusal to allow a candidate to take the tests.

states that he was employed as a "Legal Coordinator for the New York City, Department of Correction for over fourteen (14) years." (Compl. ¶ 8).  He complains about being refused the opportunity to take civil service tests for a variety of positions, but never states that other similarly situated individuals were allowed to take the exams.

Plaintiff equates a refusal to allow him to take the test with a "discriminatory job denial"; however, plaintiff's ability to get the job would also have depended on his score on the tests.  Plaintiff also states in a general fashion that he was "treated differently than other similarly situated potential employees," and that "[s]uch selective treatment was based on impermissible considerations *including but not limited to his age, color, gender, religion, national origin, ethnicity, creed and sexual orientation*." (Compl. ¶ 22) (emphasis added).  Plaintiff appears to be simply listing all the available bases for discrimination without really explaining how or why he was allegedly denied the opportunity to take these examinations.

Plaintiff also apparently believes that because he has a law degree and an LL.M.,[14] he is more qualified for the jobs that he lists than other individuals.  (Compl. ¶¶ 31, 46).  Plaintiff states that "[u]pon information and belief, Christian, white, Black, female and under 40 years of age employees are hired systematically by the State of New York even though they do not meet the hiring criteria and for the same reasons jobs were granted in the case at hand." (Compl. ¶ 20).  Once again, plaintiff lists a variety of individuals who he "believes" have been hired by the State of New York

---

[14] An LL.M. refers to the title: "Master of Laws" and is an advanced law degree.

even though they were not qualified for the jobs for which they were hired.  Although plaintiff attempts to fashion this statement into a claim of discrimination against him, there is absolutely no support for this statement.

In order to state a claim for failure to hire under Title VII, plaintiff must allege that the position for which he was applying was eventually filled by someone who was not in the protected class. *See The Homeless Patrol v. Joseph Volpe Family*, No. 09 Civ. 3628, 2010 WL 2899099, at *22 (S.D.N.Y. June 29, 2010) (citing *Farias v. Instructional Systems, Inc*, 259 F.3d 91, 98 (2d Cir. 2001))*.* Plaintiff's claim in this case is that he was not allowed to take the civil service examination for these jobs, but he never specifically alleges that people who are not in the protected class were hired for the specific jobs.[15]  In fact, when plaintiff mentions other people who he believes were hired for jobs in general, he mentions at least two categories (Black and female) that are also protected classes.  Thus, plaintiff does not state a claim under Title VII, and any such claims may be dismissed.

Plaintiff also uses the word "retaliation," however; there is no statement of facts that would support a claim that defendants retaliated against plaintiff for challenging a discriminatory practice under Title VII.  Plaintiff alleges only that he was not allowed to take certain civil service examinations and never states how or why anyone

---

[15] Plaintiff never mentions who was hired for the specific jobs.  In *The Homeless Patrol*, the plaintiff claimed that he was not hired by the Metropolitan Transit Authority (MTA) because of his German surname, *after* he had passed the tests for a "Conductor" and "Structure Maintainer." 2010 WL 2899099 at *22.  Although the court dismissed the claim primarily because plaintiff failed to exhaust his administrative remedies, the court also stated that "[h]e also does not allege any facts sufficient to create an inference of discrimination, such as whether these positions remained open or eventually were filled by someone whose ancestry was not German." *Id.* (citing *Farias, supra*).

19

retaliated against plaintiff for his "complaints." (Compl. ¶¶ 35, 51).  He states that after he "opposed" the retaliatory and discriminatory practices, he was "threatened" by the individual state defendants, although plaintiff never states the fact surrounding these alleged "threats."

To establish retaliation under Title VII, the plaintiff must show that (1) he was engaged in protected activity by opposing a practice that is made unlawful by Title VII; (2) the employer was aware of the protected activity; (3) he was subjected to adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Galdieri-Ambrosini*, 136 F.3d at 292 (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).  In addition to the failure to explain how plaintiff alleges that he opposed the defendants' alleged discrimination, plaintiff states only that he was "threatened" because he complained.  Plaintiff does not state that he suffered any adverse "employment" action as a result of the alleged retaliation and would therefore, be unable to state a viable claim for retaliation under Title VII. Thus, any claims for retaliation may be dismissed.

As stated above, Title VI prohibits discrimination in programs and activities receiving federal assistance. 42 U.S.C. § 2000d.  In plaintiff's complaint, he never mentions federal funding, and does not state a claim under Title VI.  This is another instance in which plaintiff is merely listing possible bases for a federal complaint without any substance to the claim.  Therefore, any claim that plaintiff purports to bring under Title VI may be dismissed.

## VIII.  Federal "Criminal" Penalties

Without citing any relevant statutory basis, plaintiff seems to request that the defendants be found guilty of criminal offenses.  In his section requesting relief, he asks that the court "[e]nter a judgment for infliction of punishment and *criminal penalties* on the active tortfeasors/defendants for engaging in criminal enterprise, conspiracies and for the intentional and willful violations of the plaintiff's Civil Rights . . . ." (Compl. at p.31).

The law is quite clear that in the federal system, crimes are always prosecuted by the Federal Government, not by private complaints. *Hill v. DiDio*, 191 F. App'x 13, 14-15 (2d Cir. 2006) (citing *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)).  For the court to conclude otherwise, the plaintiff must show that Congress specifically intended to create a private right of action pursuant to the statutes that plaintiff seeks to enforce. *Id. See also Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (same).  Plaintiff in this case cites no plausible basis upon which this court could assess federal criminal penalties against the defendants pursuant to plaintiff's civil employment discrimination complaint.  Thus, to the extent that plaintiff requests federal criminal penalties, the complaint may be dismissed with prejudice.

## IX.  New York State Statutes and Common Law Claims

First, the court notes that, without a federal basis for plaintiff's claims, the court may decline to exercise supplemental jurisdiction over any of plaintiff's state law claims under 28 U.S.C. § 1367(c).  State law claims, standing alone, are more

appropriately determined in a state forum in the interests of comity and efficiency. *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  If the federal claims are dismissed before trial, then there is no basis for federal court jurisdiction, and any state law claims should generally be dismissed. *Cave v. E. Meadow Uniton Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).  All plaintiff's state law claims could thus be dismissed without prejudice to him bringing his claims in state court, if appropriate or as supplemental to any properly amended federal complaint under Title VII.[16]

However, the court also notes that some of plaintiff's state law claims fail to state proper causes of action in any event.  Plaintiff cites section 19.01 of the New York Mental Hygiene Law in one of his "Claims for Relief." (*See* Compl. at p.29). Section 19.01 of the Mental Hygiene Law is the New York Legislature's "Declaration of Policy" underlying the Alcoholism and Substance Abuse Act. *Johnson v. White*, No. 06 Civ. 2540, 2010 WL 3958842, at *7 (S.D.N.Y. Sept. 9, 2010) (citing N.Y.

---

[16] The court also notes that, to the extent that plaintiff asserts any claims based on the New York State Constitution, he has no private right of action where plaintiff would have an alternative remedy under section 1983. *See Flores v. City of Mt. Vernon*, 41 F. Supp. 2d 439, 447 (S.D.N.Y. 1999).  Although plaintiff states no constitutional claim for relief sufficient to assert claims under section 1983 because he cites no personal involvement of the named individual defendants, section 1983 would be available in the appropriate circumstances, thus, no cause of action under the New York State Constitution exists here.  The only possibility for supplemental state claims in this case would be under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* and the New York City Administrative Code §§ 8-107 *et seq*. if plaintiff is able to state a proper Title VII claim in his amended complaint.  The New York State Human Rights Law and the cited sections of the New York City Administrative Code provide similar protection to Title VII. This citation of the New York City Code would require that plaintiff was denied entry to examinations that were held in New York City.  Because the court is recommending dismissal of all plaintiff's federal claims at this time, the court need not determine the propriety of the supplemental claims, but will recommend dismissing them without prejudice.

Mental Hyg. Law, § 19.01).  Regardless of what plaintiff's claim may be, the court in *Johnson* found that section 19.01 does not provide a private right of action.  Without a private right of action, plaintiff may not rely upon this statute, and any claim purporting to be based on this section may be dismissed.[17] *Id.*

Plaintiff also states that the defendants have committed crimes under the New York Penal Law, "including but not limited to aggravated harassment, hate law crimes, verbal assaults, falsifying business records and fraud." (Compl. ¶62).  As with federal crimes, plaintiff has no private right of action to enforce state criminal statutes and lacks the authority to institute a criminal investigation. *See Madden v. Abate*, 800 F. Supp. 2d 604, 606-607 (D. Vt. 2011) (existence of a criminal statute prohibiting certain conduct does not in and of itself create a civil cause of action that may be brought by the victim of that conduct); *Heicklen v. U.S. Dep't of Homeland Sec.*, No. 10 Civ. 2239, 2011 WL 3841543, at *15 (S.D.N.Y. Aug. 30, 2011) (Report-Recommendation) (citations omitted), *adopted by* 2011 WL 4442669 (S.D.N.Y. Sept. 23, 2011).  Thus, even if the court were exercising supplemental jurisdiction, plaintiff would state no claim under New York State Penal Laws against any of the named defendants. *See also Senese v. Hindle*, No. 11-CV-72, 2011 WL 4536955, at *11-12

---

[17] The court suspects that plaintiff may be citing this section because in paragraph 40 of his complaint, he alleges that the individually named defendants are "chronic alcohol abusers," and that the New York State government "failed to detect and prevent alcohol abuse problems and treat individually named defendants because they had [alcohol abuse problems] and their conduct injured the plaintiff." (Compl. ¶ 40).  Plaintiff has read section 19.01, stating New York's policy declaring that State and local governments have a responsibility to detect and prevent alcohol abuse problems and treat the individuals who have them, as the basis for a private right of action against the state, and against those that he charges with alcohol abuse.  Because there is no private right of action, plaintiff cannot state a claim regardless of the claim that he might be trying to make.

(E.D.N.Y. Sept. 9, 2011) (Report-Recommendation) (citing *inter alia Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996) (absent guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes), *adopted by* 2011 WL 4529359 (E.D.N.Y. Sept. 28, 2011).

## X.   Conclusion

Plaintiff's complaint is a confused recitation that begins with a claim that he was not allowed to take certain civil service examinations because of the "aftermath" of 9/11 and because he was Pakistani or appeared Muslim.  Essentially, plaintiff alleged discrimination based upon national origin.  However, as the court read further into the complaint it degenerated into baseless rambling, raising every possible basis for employment discrimination, including "sexual orientation" and disability, without stating his sexual orientation or his disability, or, how the defendants discriminated on those bases.[18]  Plaintiff cites every possible basis for discrimination, but also cites statutes that in no way apply to him or to the situation, without some tortured interpretation.  Plaintiff's claims are inconsistent because he states in one paragraph that minority applicants scored lower than whites, and that the test set minority candidates up to fail, while in another paragraph stating that "defendant parties manipulated a hiring system to benefit Christian, white, black, females and under 40 applicants." (*Compare* Compl. ¶ 41 *with* ¶ 61).  However, black and female applicants belong to a protected class also.  Plaintiff claims that the test questions were vague

---

[18] Clearly, neither plaintiff's sexual orientation, nor his disability could be related to alleged discrimination as the result of the terrorist attack on September 11.

and hypothetical, but also claims that he never took the examinations. (Compl. ¶ 42).

As stated above, complaints relying on civil rights statutes are insufficient unless they contain some specific allegations of fact, indicating a deprivation of rights instead of a complaint like this one, containing "a litany of general conclusions that shock but have no meaning." *Rudy v. Auburn Correctional Facility*, No. 2011 WL 3957337, at *6 (N.Y.N.D. Aug. 9, 2011) (citing *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987); *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995)).  Because plaintiff's complaint contains no real basis for relief, the court will recommend dismissal.

Ordinarily, the court "should not dismiss a pro se complaint without granting leave to amend at least once *if there is any indication that a valid claim might be stated*." *Branum v. Clark*, 927 F.2d 698, 704-705 (2d Cir. 1991) (emphasis added).  In this case, *two* of plaintiff's claims regarding the alleged denial of opportunity to take the civil service examination due to ethnicity and age could conceivably state a Title VII claim against the State of New York.  Therefore, the court will recommend that only plaintiff's federal claims in that regard be dismissed without prejudice, and that plaintiff be given an opportunity to submit an amended complaint raising those claims under Title VII.  The rest of plaintiff's federal claims are either completely frivolous or cite statutes that have no relationship to plaintiff's claims and should be dismissed with prejudice because no amendment would survive a dismissal.

The court will also recommend that supplemental jurisdiction be declined with respect to any of plaintiff's state law claims, many of which are also clearly frivolous,

25

but that the dismissal of those claims be without prejudice to plaintiff bringing any appropriate state law claims in state court or as supplemental to any properly amended complaint under Title VII as discussed in footnote 16 above.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) be **GRANTED AT THIS TIME FOR PURPOSES OF FILING THIS ACTION ONLY**, and it is

**RECOMMENDED**, that the complaint be dismissed **WITH PREJUDICE** as frivolous or for failure to state a claim as to all plaintiff's federal claims **EXCEPT** plaintiff's claim against the State of New York under Title VII, alleging that he was denied the opportunity to take civil service examinations based upon age and ethnicity, and that this claim be **DISMISSED WITHOUT PREJUDICE**, and it is

**RECOMMENDED**, that if the court approves this recommendation, plaintiff be given **FORTY-FIVE (45) DAYS FROM THE DATE OF THE ORDER APPROVING THE RECOMMENDATION** within which to file the appropriate amended complaint only with respect to the two previously-identified Title VII claims, which shall supercede the original complaint, and it is

**RECOMMENDED**, that supplemental jurisdiction of any of plaintiff's state law claims be denied at this time, and those claims be **DENIED WITHOUT PREJUDICE**, and it is

**RECOMMENDED,** that if the court approves this recommendation, and if plaintiff timely files an amended complaint, the District Court order the Clerk to return

26

the complaint to me for further review.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 8, 2012

**Hon. Andrew T. Baxter**
**U.S.  Magistrate Judge**